***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Phillips and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS 1. The parties are subject to the N.C. Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. Plaintiff's average weekly wage will be determined by Form 22.
5. Plaintiff sustained an injury on or about December 17, 2002, with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of plaintiff's employment and is admittedly compensable.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 47 years old. Plaintiff has a high school education. Plaintiff is a widower and has a teenage daughter living with him.
2. Plaintiff is employed by Methodist College as the head carpenter. He began employment with defendant-employer in 2002.
3. On December 17, 2002, plaintiff was building a shed roof. While retrieving a sheet panel, plaintiff's leg was crushed by 17 sheets of plywood. A security officer passed by and called for an ambulance.
4. Plaintiff was transported to Cape Fear Valley Medical Center. Plaintiff was diagnosed with a transverse fracture of his right leg. A full leg cast was applied and plaintiff was discharged. *Page 3 
5. On January 4, 2003, plaintiff had difficulty breathing, and called 911. Plaintiff was transported to the hospital where he was admitted to the Intensive Care Unit. It was discovered that plaintiff had developed a pulmonary embolism due to the fracture in his leg, which caused immobility.
6. Plaintiff was placed on medications to dissolve the embolism. Plaintiff was also intubated, intentionally paralyzed, and placed on a breathing machine to help him breath properly. Plaintiff was unable to communicate with others during the majority of his hospital stay. Plaintiff was hospitalized for 20 days.
7. Defendant-carrier retained Ms. Donna Haynes as plaintiff's nurse case manager. Ms. Haynes was hired during the course of plaintiff's hospitalization. Ms. Haynes coordinated with the hospital, and various agencies to ensure that plaintiff would be capable of being released to his home upon discharge.
8. Ms. Haynes coordinated physical therapy, occupational therapy, nursing visits, transportation, and modifications to plaintiff's home to include a handicapped ramp, and restroom accommodations.
9. Plaintiff's mother, Rosa Jurisic, informed Ms. Haynes that she would be plaintiff's primary caregiver following his release from the hospital. Ms. Haynes testified that had Mrs. Jurisic not been available to help plaintiff, he may have required the help of a chore provider. However, Ms. Haynes testified that this would have only been necessary for a period of approximately eight days after his release from the hospital, when plaintiff came out of his long leg cast.
10. Upon his discharge from the hospital, plaintiff's physicians did not prescribe attendant care for plaintiff, and plaintiff did not request attendant care. Liberty Home Care went *Page 4 
to plaintiff's home and provided skilled nursing care, including evaluation, treatment, education and blood draws. A physical therapist also traveled to plaintiff's home to provide care.
11. Mrs. Jurisic did not obtain permission from the Industrial Commission for the rendering of practical nursing services.
12. Plaintiff continued to treat with Dr. Jones, and Dr. Tawfik for his leg, high blood pressure, and lung conditions. According to the medical records, Dr. Tawfik continued plaintiff on Coumadin to ensure that he did not have any repeat pulmonary embolisms. This treatment continued for nine months post-hospitalization.
13. Dr. Dave testified that plaintiff did not need future medical treatment for the pulmonary embolism once he had completed taking Coumadin.
14. Dr. Jones rated and released Plaintiff on October 15, 2003 with a 3% permanent partial disability to his right leg. Dr. Jones released plaintiff to full-duty but cautioned him to limit his climbing. Defendant-carrier sent a Form 21 to plaintiff with regards to the 3% permanent partial disability rating in December 2003. Plaintiff was unaware that he was entitled to a second opinion on his rating.
15. Dr. Tawfik testified in his deposition that he has become plaintiff's primary physician, and is currently treating plaintiff for conditions unrelated to his compensable work injury, including high blood pressure.
16. Plaintiff has failed to present evidence that attendant care was necessary. Even assuming attendant care was necessary, plaintiff failed to request authorization for attendant care within a reasonable time.
17. At the time of the hearing, plaintiff contended that there were three bills still outstanding from his treatment in 2003. As of November 15, 2005, Cumberland Anesthesia *Page 5 
reported a balance of $929.00 and as of November 8, 2005, Cumberland EMS reported a balance of $358.00.
18. Defendant-carrier commenced payment of temporary total disability benefits in the amount of $251.50, based on an average weekly wage of $377.23. Plaintiff returned to work on April 16, 2003.
19. Defendant-carrier filed a Form 28T on April 17, 2003. As plaintiff was returned to work with restrictions and limited hours, defendant-carrier filed a Form 62 and commenced payment of temporary partial disability benefits.
20. Plaintiff continues to work full-duty for defendant-employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. As a result of plaintiff's compensable accident, plaintiff is entitled to reasonable and necessary medical treatment, including payment of his outstanding medical bills related to his compensable injury. N.C. Gen. Stat. §§ 97-25, 97-29. Defendants are not responsible for medical bills for plaintiff's unrelated conditions, including high blood pressure. Id.
2. A family member may not recover compensation for attendant care services for any periods of time before the Industrial Commission gives its written authority to render those services for pay. Hatchett v.Hitchcock Corporation, 240 N.C. 591 (1954).
3. Plaintiff is entitled to a second opinion on his permanent partial disability rating. N.C. Gen. Stat. § 97-27 (b).
 *********** *Page 6 
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall authorize an appointment with the physician of plaintiff's choice for a second opinion with regards to the permanent partial disability rating to his leg.
2. Defendants shall pay for medical expenses incurred, or to be incurred, as a result of plaintiff's right leg injury sustained on December 17, 2002.
3. Defendants shall pay directly to plaintiff's attorney a fee in the amount of 25% of the award plaintiff shall receive.
This the 17th day of July, 2006.
S/_______________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION:
 S/_____________ THOMAS J. BOLCH COMMISSIONER *Page 1